**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY (Newark)**

| | |
|---|---|
| Nasima Sarwar, Md Islam, Vartan Nazarian, Menachem Langer, Thomas Schenk, Richard Baker, Charles Robinson, Larry Day, George Williams, Jeffrey Mattson, Jana Johnson, Stevie Mason, Tommie Sherrill, Matthew Klein, Dan Bishop, Brian Berge, Pablo Lopez, James Graves, Mary Harmon, Gerald Moore, Pat Moore, Johnny Boggs, Anthony Fiorino, Garry Norris, Edward Smith, Maurice Harrell, Jr., David Stefanik, Wagner Maciel, Leonard Earl Jones, Rashonda Wheeler and Randy Withers, <br><br> Plaintiffs, <br> vs. <br><br> BMW of North America, LLC and Bavarian Motor Works, <br><br> Defendants. | **Civil Action No.:** _____ <br><br> **COMPLAINT** |

For this Complaint, the Plaintiffs[1] Nasima Sarwar, Md Islam, Vartan Nazarian, Menachem Langer, Thomas Schenk, Richard Baker, Charles Robinson, Larry Day,  George Williams, Jeffrey Mattson, Jana Johnson, Stevie Mason, Tommie Sherrill, Matthew Klein, Dan Bishop, Brian Berge, Pablo Lopez, James Graves, Mary Harmon, Gerald Moore, Pat Moore, Johnny Boggs, Anthony Fiorino, Garry Norris, Edward Smith, Maurice Harrell, Jr., David Stefanik, Wagner Maciel, Leonard Earl Jones, Rashonda Wheeler and Randy Withers, by undersigned counsel, state as follows:

## PRELIMINARY STATEMENT

1.      This is a group action by the purchasers of vehicles (hereafter the "subject vehicles") manufactured and sold by the Defendants BMW of North America, LLC and

---

[1]Additional Plaintiffs may be added at a later date.

Bavarian Motor Works.   Plaintiffs seek damages related to their vehicles' excessive consumption of engine oil and Defendants' failure to honor the terms of their warranty.

2.      The Plaintiffs would not have purchased the subject vehicles had they been made aware of the subject vehicles' defective engines.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Federal Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiffs claim more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendants are subject to personal jurisdiction in this District and where Defendants, as principals, direct and control warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

5.      Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiffs' claims occurred within this District.

## PARTIES

6.      Plaintiffs were, at all relevant times, adult individuals who either reside in New Jersey, and/or who purchased motor vehicles in New Jersey which were manufactured or sold by Defendants, and/or who reside in other states.

7.      Defendant BMW of North America, LLC ("BMW-NA") is organized under the laws of Delaware with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff, New Jersey.   BMW-NA was created in 1975 to act as the United States importer

2

of BMW luxury and performance vehicles, which were traditionally manufactured in Munich, Germany.  At all relevant times, BMW was engaged in the business of importing, assembling, marketing, distributing, and warranting BMW automobiles in the State of New Jersey and throughout the United States.

8.     Defendant Bavarian Motor Works ("BMW-GER") is a corporation organized and existing under the laws of Germany, with its principal place of business located in Munich, Bavaria, Germany.   BMW-GER is the parent corporation of BMW of North America, LLC.

9.     BMW-NA and BMW-GER (collectively "BMW") sell BMW vehicles through a network of independently owned dealerships across the United States that are agents of BMW-NA and BMW-GER.

**FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS**

**I.     Nasima Sarwar**

10.     Plaintiff Nasima Sarwar (hereafter "N. Sarwar") is an adult individual residing in Allendale, New Jersey.

11.     On or about June 2, 2011, N. Sarwar purchased a new 2012 BMW 650i, Vehicle Identification Number WBALZ3C57CDL70447 (hereafter the "N. Sarwar Vehicle") from Park Avenue BMW in Maywood, New Jersey, an authorized dealer of the Defendants.

12.     Within several months after purchasing the N. Sarwar Vehicle, N. Sarwar observed that it consumed an excessive amount of engine oil which required her to add two quarts of oil every 5,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

13.     N. Sarwar notified an authorized dealer of the Defendants throughout the warranty period that the N. Sarwar Vehicle consumed an excessive amount of engine oil and took the N. Sarwar Vehicle into the dealer every 5,000 miles so that oil could be added.

14.     The authorized dealer told N. Sarwar that the excessive oil consumption "was normal," and accordingly, no repair was offered or recommended.

15.     As a result of the N. Sarwar Vehicle's excessive consumption of engine oil, N. Sarwar had to add engine oil to the N. Sarwar Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## II.     Md Islam

16.     Plaintiff Md Islam (hereafter "M. Islam") is an adult individual residing in Cliffside Park, New Jersey.

17.     In or about June of 2011, M. Islam purchased a new 2012 BMW 750LXi, Vehicle Identification Number WBAKC8C56CC434736 (hereafter the "M. Islam Vehicle") from an authorized dealer of the Defendants.

18.     Beginning in 2012, M. Islam observed that the M. Islam Vehicle consumed an excessive amount of engine oil which required him to add one to two quarts of oil every 300-400 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

19.     M. Islam notified an authorized dealer of the Defendants throughout the warranty period that the M. Islam Vehicle consumed an excessive amount of engine oil.

20.     In response, M. Islam was told "it's nothing," and accordingly, no repairs were offered or recommended for the subject vehicle's excessive oil consumption.

4

21.     As a result of the M. Islam Vehicle's excessive consumption of engine oil, M. Islam had to add engine oil to the M. Islam Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**III.    Vartan Nazarian**

22.     Plaintiff Vartan Nazarian (hereafter "V. Nazarian") is an adult individual residing in Woodcliff Lake, New Jersey.

23.     On or about July 11, 2012, V. Nazarian purchased a used 2010 BMW 7 Series 750Lxi, Vehicle Identification Number WBAKC8C58AC430197 (hereafter the "V. Nazarian Vehicle") from BMW of Tenafly in Tenafly, New Jersey, an authorized dealer of the Defendants.

24.     Within 12 to 14 months after purchasing the V. Nazarian Vehicle, V. Nazarian observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 300-500 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

25.     V. Nazarian complained to an authorized dealer of the Defendants during the warranty period that the V. Nazarian Vehicle consumed an excessive amount of engine oil.

26.     In response, V. Nazarian was told that it was normal, and accordingly, no repairs were offered or recommended for the oil consumption issue.

27.     In October 2015, Defendants' authorized dealer performed a "N63 Customer Car Package" and reprogrammed the "CBS engine oil intervals … from 15,000 miles to 10,000 mile base calculation."

28.     As a result of the V. Nazarian Vehicle's excessive consumption of engine oil, V. Nazarian had to add engine oil to the V. Nazarian Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**IV.     Menachem Langer**

29.     Plaintiff Menachem Langer (hereafter "M. Langer") is an adult individual residing in Lenoir City, Tennessee.

30.     On June 24, 2017, M. Langer purchased a used 2014 BMW 750li, Vehicle Identification Number WBAYF8C5XED653620 (hereafter the "M. Langer Vehicle") from Atlanta Luxury Motors in Duluth, Georgia.

31.     Several months after purchasing the M. Langer Vehicle, M. Langer observed that it consumed an excessive amount of engine oil which required him to add two quarts of oil every 2,000 to 3,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

32.     In January 2018 and during the warranty period, M. Langer complained to an authorized dealer of the Defendants that the M. Langer Vehicle consumed an excessive amount of engine oil.

33.     In response, M. Langer was told the oil consumption was normal and "within normal limits."  The dealer has not offered or recommended any repairs for the subject vehicle's excessive oil consumption.

34.     As a result of the M. Langer Vehicle's excessive consumption of engine oil, M. Langer had to add engine oil to the M. Langer Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## V.     Thomas Schenk

35.     Plaintiff Thomas Schenk (hereafter "T. Schenk") is an adult individual residing in Leland, North Carolina.

36.     On November 27, 2017, T. Schenk purchased a used 2014 BMW 5 Series 550i, Vehicle Identification Number WBAKN9C55ED681758 (hereafter the "T. Schenk Vehicle") from BMW of Wilmington in Wilmington, North Carolina, an authorized dealer of the Defendants.

37.     On January 25, 2018, T. Schenk complained to an authorized dealer of the Defendants that the light came on in the T. Schenk Vehicle instructing to add oil.

38.     In response, the dealer added two quarts of oil and told T. Schenk that because the engine was so powerful, it burned more oil.  Other than adding adding oil to the T. Schenk Vehicle on numerous occasions, the dealer did not offer or recommend any repairs for its excessive oil consumption.

39.     Since February 2018, and over the course of driving the T. Schenk Vehicle for 5,000 miles, T. Schenk observed that his vehicle consumed an excessive amount of engine oil which required him to take the T. Schenk Vehicle to Defendants' authorized dealer on about ten different occasions so that dealer would add oil to the engine.

40.     Throughout the warranty period, and as a result of the T. Schenk Vehicle's excessive consumption of engine oil, T. Schenk had to add engine oil to the T. Schenk Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## VI.    Richard Baker

41.     Plaintiff Richard Baker (hereafter "R. Baker") is an adult individual residing in New Orleans, Louisiana.

42.     On February 7, 2013, R. Baker purchased a used 2009 BMW 750li, Vehicle Identification Number WBAKA83559CY33362 (hereafter the "R. Baker Vehicle") from Peake BMW in Kenner, Louisiana, an authorized dealer of the Defendants.

43.     Soon after purchasing the R. Baker Vehicle, R. Baker observed that it consumed an excessive amount of engine oil which required him to add two quarts of oil every 200 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

44.     In 2014 and during the warranty period, R. Baker complained to an authorized dealer of the Defendants that the R. Baker Vehicle consumed an excessive amount of engine oil.

45.     In response, R. Baker was told the oil consumption was normal and no repairs were offered or recommended for the subject vehicle's excessive oil consumption.

46.     As a result of the R. Baker Vehicle's excessive consumption of engine oil, R. Baker had to add engine oil to the R. Baker Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## VII.    Charles Robinson

47.     Plaintiff Charles Robinson (hereafter "C. Robinson") is an adult individual residing in Terry, Mississippi.

8

48.     On June 3, 2016, C. Robinson purchased a used 2014 BMW 750i, Vehicle Identification Number WBAYA8C52ED824987 (hereafter the "C. Robinson Vehicle") from Herrin-Gear BMW in Jackson, Mississippi, an authorized dealer of the Defendants.

49.     After purchasing the C. Robinson Vehicle, C. Robinson observed that it consumed an excessive amount of engine oil which required him to add two quarts of oil every 1,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

50.     During the warranty period, C. Robinson complained to an authorized dealer of the Defendants that the C. Robinson Vehicle consumed an excessive amount of engine oil.

51.     In response, C. Robinson was told with respect to the vehicle's oil consumption, "this is how the car is."  The dealer did not offer or recommend any repairs for the subject vehicle's excessive oil consumption.

52.     As a result of the C. Robinson Vehicle's excessive consumption of engine oil, C. Robinson had to add engine oil to the C. Robinson Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**VIII.    Larry Day**

53.     Plaintiff Larry Day (hereafter "L. Day") is an adult individual residing in Knightdale, North Carolina.

54.     On October 15, 2015, L. Day purchased a used 2013 BMW 550i, Vehicle Identification Number WBAFR9C52DDX80140 (hereafter the "L. Day Vehicle") from Leith BMW in Raleigh, North Carolina, an authorized dealer of the Defendants.

55.     Within the first 5,000 miles of driving the subject vehicle, L. Day observed that it consumed an excessive amount of engine oil which required him to add one quart of oil

every 5,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

56.     During the warranty period, L. Day complained to an authorized dealer of the Defendants that the L. Day Vehicle consumed an excessive amount of engine oil.

57.     In response, L. Day was told the oil consumption was normal and the dealer did not offer or recommend any repairs for the L. Day Vehicle's excessive oil consumption.

58.     In April 2018, the L. Day Vehicle's engine was replaced by Leith BMW. Thereafter, the new engine required L. Day to add one quart of oil every 2,000 miles.

59.     As a result of the L. Day's Vehicle's excessive consumption of engine oil, L. Day had to add engine oil to the L. Day Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's new engine from failing.

**IX.     George Williams**

60.     Plaintiff George Williams (hereafter "G. Williams") is an adult individual residing in Blountville, Tennessee.

61.     On September 20, 2016, G. Williams purchased a used 2014 BMW 750Li, Vehicle Identification Number WBAYE8C57ED780649 (hereafter the "G. Williams Vehicle") from Rick Hill Imports in Kingsport, Tennessee, an authorized dealer of the Defendants.

62.     Within a few months after purchasing the G. Williams Vehicle, G. Williams observed that it consumed an excessive amount of engine oil which required him to add at least two quarts of oil every 1,000 to 1,500 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

63.     During the warranty period, G. Williams complained to an authorized dealer of the Defendants that the G. Williams Vehicle consumed an excessive amount of engine oil.

64.     In response, G. Williams was told the oil consumption was normal "because of the turbos" and other than adding oil to the subject vehicle, the dealer did not offer or recommend any repairs for the G. Williams Vehicle's excessive oil consumption.

65.     As a result of the G. Williams Vehicle's excessive consumption of engine oil, G. Williams had to add engine oil to the G. Williams Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## X.    Jeffrey Mattson

66.     Plaintiff Jeffrey Mattson (hereafter "J. Mattson") is an adult individual residing in Fredericksburg, Virginia.

67.     On November 1, 2014, J. Mattson purchased a used 2012 BMW 750Lxi, Vehicle Identification Number WBAKC8C50CC435686 (hereafter the "J. Mattson Vehicle") from Mercedes-Benz of Fredericksburg in Fredericksburg, Virginia.

68.     After purchasing the J. Mattson Vehicle, J. Mattson observed that it consumed an excessive amount of engine oil which required him to add at least two quarts of oil every 8,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

69.     During the warranty period, J. Mattson complained to an authorized dealer of the Defendants that the J. Mattson Vehicle consumed an excessive amount of engine oil.

70.     In response, the dealer did not offer or recommend any repairs for the J. Mattson Vehicle's excessive oil consumption.

71.     As a result of the J. Mattson Vehicle's excessive consumption of engine oil, J. Mattson had to add engine oil to the J. Mattson Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XI.     Jana Johnson**

72.     Plaintiffs (hereafter "J. Johnson") is an adult individual residing in Pewee Vally, Kentucky.

73.     On December 15, 2017, J. Johnson purchased a used 2012 BMW 650i, Vehicle Identification Number WBALZ3C51CDL70847 (hereafter the "J. Johnson Vehicle") from Craig & Landreth Cars in Crestwood, Kentucky.

74.     After purchasing the J. Johnson Vehicle, J. Johnson observed that it consumed an excessive amount of engine oil which required her to add two quarts of oil every 3,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

75.     During the warranty period, J. Johnson complained to an authorized dealer of the Defendants that the J. Johnson Vehicle consumed an excessive amount of engine oil.

76.     In response, J. Johnson was told the oil consumption was normal and the dealer did not offer or recommend any repairs for the J. Johnson Vehicle's excessive oil consumption.

77.     As a result of the J. Johnson Vehicle's excessive consumption of engine oil, J. Johnson had to add engine oil to the J. Johnson Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XII.    Stevie Mason

78.     Plaintiff Stevie Mason (hereafter "S. Mason") is an adult individual residing in Birmingham, Alabama.

79.     On September 10, 2013, S. Mason purchased a used 2011 BMW 550i, Vehicle Identification Number WBAFR9C59BC617777 (hereafter the "S. Mason Vehicle") from SAI Irondale Imports in Birmingham, Alabama, an authorized dealer of the Defendants.

80.     Right after purchasing the S. Mason Vehicle, S. Mason observed that it consumed an excessive amount of engine oil which required him to add one to two quarts of oil every 1,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

81.     During the warranty period, S. Mason complained to an authorized dealer of the Defendants that the S. Mason Vehicle consumed an excessive amount of engine oil.

82.     In response, S. Mason was told that maybe the subject vehicle's oil pan was leaking but it was "nothing to worry about."  Thus, no repair for the S. Mason Vehicle's excessive oil consumption was offered at that time.

83.     In February 2018, S. Mason took the subject vehicle into the dealer complaining of a burning oil smell.  The S. Mason Vehicle's oil pan was found to be leaking and was replaced.

84.     In August 2018, S. Mason again complained to an authorized dealer of a burning oil smell with respect to the S. Mason Vehicle.  Upon inspection, the upper oil pan was found to be leaking and both the upper and lower oil pans were replaced along with the S. Mason Vehicle's gaskets and oil filter.

85.     Despite such repair attempts, S. Mason continues to add engine oil to the S. Mason Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XIII.    Tommie Sherrill**

86.     Plaintiff Tommie Sherrill (hereafter "T. Sherrill") is an adult individual residing in Woodbridge, Virginia.

87.     On March 18, 2013, T. Sherrill purchased a used 2009 BMW 750Li, Vehicle Identification Number WBAKB83589CY57880 (hereafter the "T. Sherrill Vehicle") in Virginia.

88.     Immediately after purchasing the T. Sherrill Vehicle, T. Sherrill observed that it consumed an excessive amount of engine oil which required her to add one quart of oil every 700 to 1,000 throughout the warranty period and well before the Defendants' recommended oil change intervals.

89.     T. Sherrill complained to an authorized dealer of the Defendants and the dealer replaced the oil supply line for the exhaust and the right intake manifold.  The dealer assured T. Sherrill the oil issue was resolved.

90.     Despite such repair attempts, T. Sherrill continues to add engine oil to the T. Sherrill Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XIV.    Matthew Klein**

91.     Plaintiff Matthew Klein (hereafter "M. Klein") is an adult individual residing in Villa Hills, Kentucky.

92.     On April 10, 2015, M. Klein purchased a used 2014 BMW X5 XDrive 50i, Vehicle Identification Number 5UXKR6C57E0C03646 (hereafter the "M. Klein Vehicle") from Jake Sweeney BMW in Cincinnati, Ohio, an authorized dealer of the Defendants.

93.     Soon after purchasing the M. Klein Vehicle, M. Klein observed that it consumed an excessive amount of engine oil which required him to add two quarts of oil every 3,000 to 4,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

94.     During the warranty period, in late August 2015, M. Klein complained to an authorized dealer of the Defendants that the M. Klein Vehicle consumed an excessive amount of engine oil which required him to add oil.  M. Klein also complained that oil was dripping from the subject vehicle.

95.     Upon inspection, the dealer found oil leaking from the vehicle's front oil filter housing gasket but M. Klein was unable to address the issue at that time. However, no leaks were found by the dealer when M. Klein returned in September 2015.

96.     In July 2016, M. Klein returned to the dealer for service on the M. Klein Vehicle and the dealer found oil leaking from the bell housing area of the transmission.  The front transmission seal was found to be leaking and was replaced.  However, the M. Klein Vehicle continued to burn an excessive amount of oil.

97.     As a result of the M. Klein Vehicle's excessive consumption of engine oil, M. Klein had to add engine oil to the M. Klein Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XV.   Dan Bishop

98.   Plaintiff Dan Bishop (hereafter "D. Bishop") is an adult individual residing in Leesburg, Virginia.

99.   On July 24, 2010, D. Bishop leased a new 2011 BMW 550i, Vehicle Identification Number WBAFR9C56BC617641 (hereafter the "D. Bishop Vehicle") from BMW of Sterling in Sterling, Virginia, an authorized dealer of the Defendants.

100.   At the conclusion of the lease, D. Bishop purchased the D. Bishop Vehicle.

101.   Since taking delivery of the D. Bishop Vehicle, D. Bishop observed that it consumed an excessive amount of engine oil which required him to add one quart of oil about every 2,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

102.   Initially, D. Bishop would take his vehicle to Defendants' authorized dealer to top off the oil whenever low oil light came on.  D. Bishop later started carrying a case of oil in his vehicle and would top off oil himself whenever low oil light came on.

103.   Throughout the warranty period, D. Bishop complained to an authorized dealer that the D. Bishop Vehicle burned an excessive amount of engine oil well before the Defendant's recommended oil change intervals.

104.   In response, the dealer told D. Bishop "this is just the way it is," and accordingly, did not offer or recommend any repairs for the subject vehicle's oil consumption problem.

105.   As a result of the D. Bishop Vehicle's excessive consumption of engine oil, D. Bishop had to add engine oil to the D. Bishop Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XVI.    Brian Berge

106.    Plaintiff Brian Berge (hereafter "B. Berge") is an adult individual residing in Overland Park, Kansas.

107.    On December 31, 2012, B. Berge purchased a new 2012 BMW 550i, Vehicle Identification Number WBAFU9C51CC788166 (hereafter the "B. Berge Vehicle") from Baron BMW in Merriam, Kansas, an authorized dealer of the Defendants.

108.    Within the first year of purchasing the B. Berge Vehicle, B. Berge observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 2,500 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

109.    B. Berge complained to Defendants' authorized dealer that the B. Berge Vehicle consumed an excessive amount of oil, well before the Defendant's recommended oil change intervals.

110.    In response, Defendants' authorized dealer did not acknowledge that there was a problem with the B. Berge Vehicle and, accordingly, did not offer or recommend any repairs for the subject vehicle's oil consumption problem.

111.    As a result of the B. Berge Vehicle's excessive consumption of engine oil, B. Berge had to add engine oil to the B. Berge Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XVII.    Pablo Lopez

112.    Plaintiff Pablo Lopez (hereafter "P. Lopez") is an adult individual residing in Arlington, Virginia.

113.    On December 28, 2014, P. Lopez purchased a used 2012 BMW X6 XDrive 50i, Vehicle Identification Number 5UXFG8C5XCL590382 (hereafter the "P. Lopez Vehicle") from BMW of Alexandria in Alexandria, Virginia, an authorized dealer of the Defendants.

114.    After purchasing the P. Lopez Vehicle, P. Lopez observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 500 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

115.    During the warranty period and well before the Defendant's recommended oil change intervals, P. Lopez complained to an authorized dealer that the P. Lopez Vehicle consumed an excessive amount of engine oil.

116.    In response, the dealer told P. Lopez that such oil consumption was normal and accordingly, did not offer or recommend any repairs for the subject vehicle's oil consumption problem.

117.    As a result of the P. Lopez Vehicle's excessive consumption of engine oil, P. Lopez had to add engine oil to the P. Lopez Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XVIII.    James Graves**

118.    Plaintiff James Graves (hereafter "J. Graves") is an adult individual residing in Herndon, Virginia.

119.    On January 29, 2013, J. Graves purchased a used 2012 BMW 750, Vehicle Identification Number WBAKC6C55CC397070 (hereafter the "J. Graves Vehicle") from BMW of Sterling in Sterling, Virginia, an authorized dealer of the Defendants.

18

120. After purchasing the J. Graves Vehicle, J. Graves observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 1,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

121. During the warranty period and well before the Defendant's recommended oil change intervals, J. Graves complained to an authorized dealer that the J. Graves Vehicle consumed an excessive amount of engine oil.

122. In response, the dealer told J. Graves that "this car runs hot because of the turbo charged engine," and such oil consumption was normal and accordingly, did not offer or recommend any repairs for the vehicle's oil consumption problem.

123. As a result of the J. Graves Vehicle's excessive consumption of engine oil, J. Graves had to add engine oil to the J. Graves Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XIX.    Mary Harmon**

124. Plaintiff Mary Harmon (hereafter "M. Harmon") is an adult individual residing in Memphis, Tennessee.

125. On December 23, 2009, M. Harmon purchased a new 2010 BMW 750Li, Vehicle Identification Number WBAKB8C53ACY63199 (hereafter the "M. Harmon Vehicle") from Tom Williams BMW in Irondale, Alabama, an authorized dealer of the Defendants.

126. Shortly after purchasing the M. Harmon Vehicle, M. Harmon observed that it consumed an excessive amount of engine oil which required her to add two to three quarts of

oil every 2,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

127.    During the warranty period and well before the Defendant's recommended oil change intervals, M. Harmon constantly complained to an authorized dealer that the M. Harmon Vehicle consumed an excessive amount of engine oil.

128.    In response, the dealer told M. Harmon that the burning oil was a basic characteristic of the engine of the M. Harmon Vehicle and it was normal.  The dealer did not offer or recommend any repairs for the oil consumption problem.

129.    As a result of the M. Harmon Vehicle's excessive consumption of engine oil, M. Harmon had to add engine oil to the M. Harmon Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XX.    Gerald and Patricia Moore

130.    Plaintiffs Gerald and Patricia Moore (hereafter referred to collectively as "Moore") are adult individuals residing in Solon, Iowa.

131.    On October 7, 2014, Moore purchased a new 2014 BMW 750Lxi, Vehicle Identification Number WBAYF8C57ED653784 (hereafter the "Moore Vehicle") from BMW of Dubuque in Dubuque, Iowa, an authorized dealer of the Defendants.

132.    After purchasing the Moore Vehicle, Moore observed that it consumed an excessive amount of engine oil which required them to add one quart of oil every 3,000 miles throughout the warranty period and well before the Defendants' recommended oil change intervals.

133.    During the warranty period and well before the Defendant's recommended oil change intervals, Moore complained to Defendants' authorized dealer that the Moore Vehicle consumed an excessive amount of engine oil.

134.    In response, Defendants' authorized dealer told Moore that the oil consumption was normal for the Moore Vehicle and did not offer or recommend any repairs relating to the oil consumption.

135.    As a result of the Moore Vehicle's excessive consumption of engine oil, Moore had to add engine oil to the Moore Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XXI.    Johnny Boggs**

136.    Plaintiff Johnny Boggs (hereafter "J. Boggs") is an adult individual residing in Raleigh, North Carolina.

137.    On September 3, 2013, J. Boggs purchased a used 2013 BMW X5 XDrive 50i, Vehicle Identification Number 5UXZV8C53DL426685 (hereafter the "J. Boggs Vehicle") from Charlotte Import Cars, Inc., in Charlotte, North Carolina.

138.    A year or two after purchasing the J. Boggs Vehicle, J. Boggs observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 1,000 miles and well before the Defendants' recommended oil change intervals.

139.    J. Boggs complained to Leith BMW in Raleigh, North Carolina, an authorized dealer of Defendants, that the J. Boggs Vehicle consumed an excessive amount of engine oil.

140.    In response, the dealer told J. Boggs that the oil consumption was "within the operational range of this vehicle" and did not offer or recommend any repairs.

141.     As a result of the J. Boggs Vehicle's excessive consumption of engine oil, J. Boggs had to add engine oil to the J. Boggs Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXII.     Anthony Fiorino

142.     Plaintiff Anthony Fiorino (hereafter "A. Fiorino") is an adult individual residing in Annandale, Virginia.

143.     On August 29, 2014, A. Fiorino purchased a Certified pre-owned 2011 BMW 550xi, Vehicle Identification Number WBAFU9C56BC784743 (hereafter the "A. Fiorino Vehicle") from CarMax in Sterling, Virginia.

144.     After purchasing the A. Fiorino Vehicle, A. Fiorino observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 1,500 miles and well before the Defendants' recommended oil change intervals.

145.     During the warranty period, A. Fiorino complained to BMW of Fairfax in Fairfax, Virginia, an authorized dealer of Defendants, that the A. Fiorino Vehicle consumed an excessive amount of engine oil.

146.     In response, the dealer told A. Fiorino that the oil consumption was normal "for this engine" and the dealer did not offer or recommend any repairs for the issue.

147.     As a result of the A. Fiorino Vehicle's excessive consumption of engine oil, A. Fiorino had to add engine oil to the A. Fiorino Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXIII.     Garry Norris

148.     Plaintiff Garry Norris (hereafter "G. Norris") is an adult individual residing in Roanoke, Virginia.

149.     On May 12, 2014, G. Norris purchased a used 2011 BMW 750Lxi, Vehicle Identification Number WBAKC8C57BC433173 (hereafter the "G. Norris Vehicle") from Martin's German Service in Roanoke, Virginia.

150.     After purchasing the G. Norris Vehicle, G. Norris observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 200 miles and well before the Defendants' recommended oil change intervals.

151.     During the warranty period, G. Norris complained to the Defendants' authorized dealer that the G. Norris Vehicle consumed an excessive amount of engine oil.

152.     In response, Defendants' authorized dealer told G. Norris there is nothing they can do about the oil consumption issue and whenever the add oil light comes on G. Norris "just has to add oil," and no repair was offered or recommended by the dealer.

153.     After Defendants' written warranty on the G. Norris Vehicle expired, G. Norris brought his vehicle back into the dealer with the same complaints of excessive oil consumption.  The dealer told G. Norris the vehicle's engine block needed to be replaced at an out-of-pocket cost to G. Norris of over $9,000.

154.     As a result of the G. Norris Vehicle's excessive consumption of engine oil, G. Norris had to add engine oil to the G. Norris Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXIV.     Edward Smith

155.     Plaintiff Edward Smith (hereafter "E. Smith") is an adult individual residing in Raeford, North Carolina.

156.     On February 20, 2013, E. Smith purchased a used 2011 BMW 550i GT, Vehicle Identification Number WBASN4C58BC209686 (hereafter the "E. Smith Vehicle")

23

from Valley Auto World BMW in Fayetteville, North Carolina, an authorized dealer of the Defendants.

157.   After purchasing the E. Smith Vehicle, E. Smith observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 800 to 1,000 miles and well before the Defendants' recommended oil change intervals.

158.   Each time E. Smith would drive the E. Smith Vehicle, he would make certain to carry at least three quarts of oil with him to add when the engine ran low on oil.

159.   During the warranty period, E. Smith complained to an authorized dealer of Defendants that the E. Smith Vehicle consumed an excessive amount of engine oil.

160.   In response, the Defendants authorized dealer told E. Smith that the oil consumption was normal "for this size engine," and the dealer did not offer or recommend any repairs for the issue.

161.   As a result of the E. Smith Vehicle's excessive consumption of engine oil, E. Smith had to add engine oil to the E. Smith Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXV.   Maurice Harrell, Jr.

162.   Plaintiff Maurice Harrell, Jr., (hereafter "M. Harrell") is an adult individual residing in Columbia, South Carolina.

163.   On August 8, 2009, M. Harrell purchased a new 2009 BMW 750li, Vehicle Identification Number WBAKB83569CY61524 (hereafter the "M. Harrell Vehicle") from an authorized dealer of the Defendants.

164.   After purchasing the M. Harrell Vehicle and having driven it for about 800 miles, M. Harrell observed that it consumed an excessive amount of engine oil which required

24

him to add one quart of oil every 2,500 miles and well before the Defendants' recommended oil change intervals.

165.   As a result, M. Harrell carries a gallon of oil in the trunk of the subject vehicle at all times.

166.   During the warranty period, M. Harrell complained to an authorized dealer of Defendants that the M. Harrell Vehicle consumed an excessive amount of engine oil.

167.   In response, Defendants' authorized dealer told M. Harrell that the oil consumption was normal "from engine brake requirements," and no repairs were offered.

168.   As a result of the M. Harrell Vehicle's excessive consumption of engine oil, M. Harrell had to add engine oil to the M. Harrell Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXVI.   David Stefanik

169.   Plaintiff David Stefanik (hereafter "D. Stefanik") is an adult individual residing in Great Meadows, New Jersey.

170.   On April 14, 2012, D. Stefanik purchased a used 2010 BMW X6 XDrive 50i, Vehicle Identification Number 5UXFG8C5XALZ94344 (hereafter the "D. Stefanik Vehicle") from BMW of Roxbury in Kenvil, New Jersey, an authorized dealer of the Defendants.

171.   After purchasing the D. Stefanik Vehicle, D. Stefanik observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 1,000 miles and well before the Defendants' recommended oil change intervals.

172.   During the warranty period, D. Stefanik complained to an authorized dealer of Defendants that the D. Stefanik Vehicle consumed an excessive amount of engine oil.

173.    In response, the Defendants' authorized dealer told D. Stefanik that the oil consumption was normal and the dealer did not offer or recommend any repairs for the issue.

174.    As a result of the D. Stefanik Vehicle's excessive consumption of engine oil, D. Stefanik had to add engine oil to the D. Stefanik Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXVII.    Wagner Maciel

175.    Plaintiff Wagner Maciel (hereafter "W. Maciel") is an adult individual residing in Levittown, New York.

176.    On January 27, 2012, W. Maciel purchased a new 2012 BMW X5, Vehicle Identification Number 5UXZV8C58CL425188 (hereafter the "W. Maciel Vehicle") from Prestige BMW in Ramsey, New Jersey, an authorized dealer of the Defendants.

177.    After purchasing the W. Maciel Vehicle, W. Maciel observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 600 miles and well before the Defendants' recommended oil change intervals.

178.    During the warranty period, W. Maciel complained to an authorized dealer of Defendants that the W. Maciel Vehicle consumed an excessive amount of engine oil, but dealer ignored the complaints.

179.    As a result of the W. Maciel Vehicle's excessive consumption of engine oil, W. Maciel had to add engine oil to the W. Maciel Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## XXVIII.    Leonard Earl Jones

180.    Plaintiff Leonard Earl Jones (hereafter "E. Jones") is an adult individual residing in Raeford, North Carolina.

181.    On or about March 12, 2012, E. Jones purchased a used 2011 BMW 550i, Vehicle Identification Number WBAFR9C59BC270922 (hereafter the "E. Jones Vehicle") from Leith BMW in Raleigh, North Carolina, an authorized dealer of the Defendants.

182.    After purchasing the E. Jones Vehicle, E. Jones observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 2,000 to 3,000 miles and well before the Defendants' recommended oil change intervals.

183.    During the warranty period, E. Jones complained to an authorized dealer of Defendants that the E. Jones Vehicle consumed an excessive amount of engine oil.

184.    In response, Defendants' authorized dealer told E. Jones that it was normal for the E. Jones Vehicle's V8 engine to consume more oil and the dealer did not offer any repair for the issue.

185.    As a result of the E. Jones Vehicle's excessive consumption of engine oil, E. Jones had to add engine oil to the E. Jones Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XXIX.    Rashonda Wheeler**

186.    Plaintiff Rashonda Wheeler (hereafter "R. Wheeler") is an adult individual residing in Charlotte, North Carolina.

187.    On September 21, 2015, R. Wheeler purchased a used 2012 BMW 750i, Vehicle Identification Number WBAKA8C59CDS99915 (hereafter the "R. Wheeler Vehicle") from Hendrick BMW in Charlotte, North Carolina, an authorized dealer of the Defendants.

188.    After purchasing the R. Wheeler Vehicle, R. Wheeler observed that it consumed an excessive amount of engine oil which required her to take her vehicle to the

Defendants' authorized dealer every 3,000 miles to have oil added, well before the Defendants' recommended oil change intervals.

189.    During the warranty period, R. Wheeler complained to an authorized dealer of Defendants that the R. Wheeler Vehicle consumed an excessive amount of engine oil.

190.    In response, Defendants' authorized dealer told R. Wheeler that it was normal for the R. Wheeler Vehicle's engine to burn a lot of oil and, at the time, the dealer did not offer any repair for the issue.

191.    Beginning in 2017, the R. Wheeler noticed that her vehicle was leaking oil and R. Wheeler took the vehicle into Defendants' authorized dealer on several occasions.  The dealer purported to repair the leak but the consumption of engine oil persisted.

192.    Eventually, the R. Wheeler Vehicle's engine was replaced in March 2018.

193.    As a result of the R. Wheeler Vehicle's excessive consumption of engine oil, R. Wheeler had to add engine oil to the R. Wheeler Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

**XXX.    Randy Withers**

194.    Plaintiff Randy Withers (hereafter "R. Withers") is an adult individual residing in Charlotte, North Carolina.

195.    On or about August 3, 2015, R. Withers purchased a used 2010 BMW 750xi, Vehicle Identification Number WBAKC6C56ACL67749 (hereafter the "R. Withers Vehicle") in Carolina Auto Imports in Charlotte, North Carolina.

196.    Immediately after purchasing the R. Withers Vehicle, R. Withers observed that it consumed an excessive amount of engine oil which required him to add one quart of oil every 250 to 300 miles and well before the Defendants' recommended oil change intervals.

197.    During the warranty period, R. Withers complained to an authorized dealer of Defendants that the R. Withers Vehicle consumed an excessive amount of engine oil.

198.    In response, the dealer told R. Withers that it was normal for the R. Withers Vehicle's to burn oil.  Thus, the dealer did not offer any repair for the issue.

199.    As a result of the R. Withers Vehicle's excessive consumption of engine oil, R. Withers had to add engine oil to the R. Withers Vehicle in between the Defendants' recommended oil change intervals in order to prevent the vehicle's engine from failing.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL PLAINTIFFS

200.    Defendants manufactured and placed into the stream of commerce each of the aforementioned vehicles (the subject vehicles), which the Plaintiffs subsequently purchased.

201.    At the time Plaintiffs purchased the subject vehicles, Defendants made representations as to the subject vehicles' performance and quality and assured the Plaintiffs that the subject vehicles were free from defects of workmanship.

202.    Thereafter, Plaintiffs discovered that, unbeknownst to them, the subject vehicles' engines contain a manufacturing defect which causes each of the subject vehicles to consume engine oil at an extremely rapid rate.

203.    Moreover, Plaintiffs discovered that as a result of the subject vehicles' above-described defect, Plaintiffs were required to regularly add additional engine oil to their vehicles in between the Defendants' recommended oil change intervals in order to prevent their vehicles' engines from failing and suffering from other related damage.

204.    In 2008, BMW introduced a new V8, twin-turbocharged engine, which BMW and enthusiasts refer to as the "N63."  This large, high-performance engine was designed to

be BMW's next generation V8 and was placed in certain BMW 5 Series, 6 Series, 7 Series, X5, and X6 vehicles from the 2009 through 2014 model years.

205.    Upon information and belief, the N63 engine was included on the V8 versions of the following BMW vehicles:

> F01 and F02 (7 Series Sedan) – produced from 3/2009 to 6/2012
> F04 (Active Hybrid 7) – produced from 4/2010 to 6/2012
> F07 (Gran Turismo) – produced from 9/2009 to 6/2012
> F10 (5 Series Sedan) – produced from 3/2010 to 7/2013
> F12 (6 Series Convertible) – produced from 3/2011 to 7/2012
> F13 (6 Series Coupe) – produced from 7/2011 to 7/2012
> E70 (X5) – produced from 3/2010 to 6/2013
> E71 (X6) – produced from 7/2008 to 6/2014
> E72 (ActiveHybrid X6) – produced from 9/2009 to 9/2011

206.    The subject vehicles are all equipped with the N63 engine.

207.    The N63 has become widely known and described as defective throughout the automotive industry and the BMW-enthusiast community.  It is widely recognized that N63 engines consume excessive amounts of engine oil and require frequent engine repairs, especially as compared to other, similar vehicles not containing N63 engines.

208.    Some owners and enthusiasts blame the oil consumption on BMW's decision to place the N63's twin-turbochargers between the cylinder heads, and inside of the engine V, rather than outside of the engine V, away from sensitive components, where turbochargers are typically located.

209.    N63 vehicles are notorious for consuming excessive amounts of engine oil and frequently need additional engine oil between scheduled oil changes to prevent catastrophic engine damage or failure.

210.    The oil consumption defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption.  Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded

that BMW's N63 engine was included on four out of the five most defective vehicles. (http://www.consumerreports.org/cro/magazine/2015/06/excessive-oil-consumption/index.htm.)

211.   The V8 version of the BMW 5 Series, which contained the N63 engine in 2011, 2012, and 2013 model years, was the worst performer in the study with 43 percent of vehicles needing an additional quart of oil between oil changes as of 2015. BMW's 6 Series and 7 Series, many of which contained the N63 engine, are the next worst performers. Finally, the V8 version of the X5 was the fifth worst performer in the study.

212.   The Consumer Reports study also shows that a greater percentage of defective models start to consume oil as they age.  This means that large numbers of N63 owners will begin to experience the oil consumption defect in the near future if they have not already.

213.   Many purchasers of vehicles containing the N63 engine have become upset about the excessive engine oil consumption – which was not disclosed by BMW in the product literature – and have posted internet complaints about specific frustrations and hassles caused by the oil consumption defect.

214.   For example, one N63 purchaser started a thread entitled, "Excessive oil consumption" on a BMW enthusiast website in November 2011:

> So I'm starting to get a little irritated at how much oil my 550 is burning. In the last 6k I've had to add 1 quart of oil three times.  In other words it is burning a quart every 2000 miles.  I've read about some people posting about having to add oil before but this much?? I've never owned a new car that burned any oil much less at this rate. Anyone else having this issue?  Oh btw the car has 9120 miles and I put 3100 in Europe during my ED.  When I was to have redelivery I had the dealer do an oil change and was gonna change the oil every 7.5k.

(http://www.bimmerfest.com/forums/showthread.php?t=581072.)

215. A fellow BMW enthusiast responded with four separate links about the oil consumption issue and explained that the defect "was a hot topic back in September" 2011. (*Id.*)

216. An Internet search of "N63 AND Burning Oil" reveals thousands of similar complaints regarding the oil consumption defect.[2]

217. BMW had a duty to disclose the oil consumption defect and the associated out-of-pocket repair costs since the defect poses an unreasonable safety hazard, and because BMW had exclusive knowledge or access to material facts about N63 vehicles and engines, not known or reasonably discoverable by consumers. Defendants, however, failed to disclose the defect to consumers prior to or at the time of purchase or lease.

218. The oil consumption defect has become so problematic that BMW has issued several technical service bulletins ("TSBs") to address complaints of excessive oil consumption and other problems related to the N63 engine.[3]

219. With regard to the oil consumption issue, BMW issued the following TSBs:

> NHTSA ID Number: 10046859
> Service Bulletin Number: SIB-11-08-12
> Summary: DUE TO DAMAGED SEAL RING, DURING
> ASSEMBLY, ENGINE OIL IS LEAKING FROM ENGINE OIL
> PUMP VOLUME CONTROL VALVE GASKET SEAL RING.
> MODELS E70, E71, F01, F02, F04, F07, F10, F12, F13. NO MODEL
> YEARS LISTED.
> _____
> NHTSA ID Number: 10045282
> Service Bulletin Number: SIB-11-07-12
> Summary: BMW: WHILE DRIVING VEHICLE, AT TIMES
> WOULD BE ROUGH RUNNING; WHITE OR BLUE SMOKE

---

[2] See, e.g., http://www.bimmerfest.com/forums/showthread.php?t=581072 (last visited Mar. 21, 2016); http://www.e90post.com/forums/showthread.php?t=874786 (last visited Mar. 21, 2016).
[3] TSBs are recommended repairs issued by automotive manufacturers and directed only to automotive dealers. TSBs are frequently issued when a manufacturer receives widespread reports of a particular problem with its vehicles.

SEEN EXITING EXHAUST SYSTEM AND THE ENGINE OIL IS
CONSUMED ABOVE SPECIFICATIONS.

220.   In June 2013, BMW issued SIB-11-01-13, which took the extraordinary step of changing engine oil consumption specifications for N63 vehicles, and specifically instructed service technicians to add two quarts of engine oil to N63 vehicles when the vehicles instruct owners to add only one additional quart of oil.

(http://www.xbimmers.com/forums/showthread.php?p=14449679.)

221.   Instead of addressing the underlying cause of excessive oil consumption in order to attempt to fix the defect, BMW recommended that its service technicians simply add more engine oil to respond to consumer complaints. Technicians were instructed to add two quarts of engine oil when the vehicles electronic system specifically called for one additional quart and to also add an additional quart as the default fill on N63 vehicles. While BMW did not address the underlying problem, it likely reduced the number of complaints because the engine oil level in the subject vehicles would now be overfilled, a condition that can cause the engine oil to become aeriated, resulting in potential oil starvation and reduced oil pressure.

222.   Technical Service Bulletin SIB-11-03-13 appears to be part of a campaign to conceal the oil consumption defect and represent it as a normal feature of BMW vehicles. To this effect, BMW issued SIB-11-03-13, which upon information and belief includes the following:

Service Bulletin Number: SIB-11-03-13

Summary: All engines normally consume a certain amount of engine oil. This is necessary in order to properly lubricate the cylinder walls, pistons, piston rings, valves and turbocharger(s), if equipped. In addition, engines with less than 6,000 miles will generally consume additional engine oil because the internal engine components are not fully seated (break-in). Therefore, engine oil consumption complaints received prior to 6,000 miles cannot be considered.

Once a new or remanufactured engine has accumulated 6,000 miles, oil consumption can be considered if there is a drastic change in the engine oil consumption rate (e.g., the engine oil consumption rate triples) under similar driving conditions.

Engines equipped with a turbocharger(s) will consume more engine oil than normally aspirated engines (non-turbocharged). The additional oil that is consumed in a turbocharged engine is mainly due to the turbocharger lubrication requirements. Some of the engine oil normally migrates past the turbocharger turbine bearing seals and will enter the intake tract of the engine.

All turbocharged engines also require a complex crankcase ventilation system. The crankcase ventilation system needs to maintain a small vacuum on the crankcase and not allow the crankcase to be pressurized. Pressurizing the engine crankcase can lead to external engine oil leaks and increased engine oil consumption via the piston rings and valve seals. When the load and the boost level of a turbocharged engine is varied, the path of the crankcase pressure is changed. During the crankcase ventilation path transition, a small amount of engine oil will pass through the crankcase ventilation system and is additionally consumed. The additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect.

Oil Consumption specification:

- All BMW engines (excluding Motorsport) can consume up to 1 quart of engine oil per 750 miles at any time.

- Due to the increased engine power, all Motorsport engines can consume up to 2.5 quarts of engine oil per 1,000 miles at any time.

Turbocharged Engines:
Engines that are fitted with a turbocharger(s) will consume more engine oil than naturally aspirated engines (non-turbocharged engines). In this case, a turbocharged engine could require topping of engine oil more frequently. For vehicles with N63 and N63T engines, refer to SIB-11-03-13 for additional details.

223.    BMW included every conceivable driving situation within this Service Bulletin as a factor for engine oil consumption so as to minimize their own responsibility and/or deflect blame onto consumers for the oil consumption defect. As can be seen from the TSBs,

Defendants continued to misrepresent to their customers that the rate of oil consumption in the N63 engines was normal and to be expected in engines that are fitted with turbochargers.

224.   BMW made these representations notwithstanding that the stated recommended oil service interval at the time of sale of the subject vehicles was the earlier of 15,000 miles or two years. Of course, at the rate of engine oil consumption referred to in BMW's service bulletin, the N63 vehicles would consume nearly 20 quarts of engine oil between the recommended 15,000-mile oil service intervals. Clearly, there is nothing normal or expected about this rate of oil consumption.

225.   Many N63 purchasers and automobile consumer advocates disagree that this level of engine oil consumption is normal and instead believe that it is excessive and well beyond normal.

226.   Consumer Reports offered its opinion of excessive oil consumption in the subtitle of its article: *Excessive oil consumption isn't normal: Automakers say adding oil between scheduled changes is acceptable. It's not*.

(http://www.consumerreports.org/cro/magazine/2015/06/excessive-oil-consumption/index.htm.)

227.   Following hundreds of customer complaints about the oil consumption defect and other problems with N63 vehicles, BMW launched the "N63 Customer Care Package" (bulletin B001314) on December 29, 2014 (herein, "Customer Care Package"). The Customer Care Package consisted of several different measures, which merely mask, but do not correct, the serious design and/or manufacturing defects of the N63 engine including the oil consumption defect.

228.    The Customer Care Package instructed service representatives to check each covered vehicle's timing chain, fuel injectors, mass air flow sensors, crankcase vent lines, battery, engine vacuum pump, and low pressure fuel sensor, and replace if necessary. BMW instructed its service representatives to inspect and replace these components for free, even if no longer covered by the manufacturer's standard four-year/50,000 mile warranty.

229.    Also, BMW had long emphasized the fact that its vehicles can go long periods without service and sold many N63 vehicles with the promise of a two-year or 15,000 mile service interval. The Customer Care Package significantly reduced the mileage of its recommended engine oil change intervals for the subject vehicles. As a result, BMW reduced the oil change intervals from the earlier of 15,000/two years to the earlier of 10,000 miles or one year.

230.    BMW simultaneously launched the "N63 Customer Loyalty Offer" which offered purchasers discounts on new BMW vehicles to replace their defective N63 vehicles.

231.    BMW also launched a related "N63 Customer Appreciation Program," which authorized dealerships to provide purchasers with up to $50 of BMW merchandise or accessories.

232.    Engine oil is important because it functions as an essential lubricant for the moving parts in internal combustion engines. The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear. Engine oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine. As a result, the subject vehicles need the proper amount of engine oil in order for the engine and its related parts to function safely.

233.    As suggested by the N63 Customer Care Package, upon information and belief, the oil consumption defect impacts several components of N63 vehicles, either via combustion of excessive amounts of engine oil directly or by causing these components a lack of appropriate lubrication, which results in these components to prematurely fail and need frequent replacement.

234.    The oil consumption defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.  Therefore, this oil consumption defect is unreasonably dangerous because it can cause engine failure while the subject vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing the Plaintiffs, their passengers, and others who share the road with them to serious risk of accidents and injury.

235.    Plaintiffs are informed and believe, and based thereon allege that BMW acquired its knowledge of the oil consumption defect in 2008, if not before, through sources not available to Plaintiffs, including but not limited to pre-release testing data, durability testing, early consumer complaints about the oil consumption defect to Defendants and their dealers, testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates, as well as, from other internal sources.

236.    Defendants had a duty to disclose the oil consumption defect and the associated out-of-pocket repair costs to Plaintiffs because the defect poses an unreasonable safety hazard, and because Defendants had exclusive knowledge or access to material facts about the subject vehicles that were not known or reasonably discoverable by the Plaintiffs.

Defendants, however, failed to disclose the Oil Consumption Defect to consumers prior to or at the time of purchase or lease.

237.    The oil consumption defect can be and has been enormously consequential to Plaintiffs, burdening them with out-of-pocket expenses that would not be necessary but for such defect and depriving them of their original bargains.   First, excessive engine oil consumption requires additional service visits and increased maintenance costs due to the recently decreased oil change intervals, which the Plaintiffs specifically sought to avoid by purchasing high-end BMW vehicles. Second, the oil consumption defect means that Plaintiffs must be concerned with obtaining BMW-approved engine oil when needed.   If Plaintiffs continue to drive without adding oil, their vehicles might catastrophically fail and strand them or potentially cause a life-threatening accident.   This discourages Plaintiffs from traveling long distances in their N63 vehicles or forces them to carry an extra supply of oil.   Third, Plaintiffs will suffer significant loss when they sell the subject vehicles because the reputation of these vehicles has been impaired by now-public research establishing that these vehicles suffer from the oil consumption defect.

238.    Plaintiffs each provided Defendants or one or more of its authorized dealers with an opportunity to repair the problems with the subject vehicles. The Defendants have neglected, failed, refused or otherwise been unable to repair the substantial impairments to the subject vehicles within a reasonable amount of time or a reasonable number of attempts.

239.    The oil consumption defect experienced by the Plaintiffs substantially impairs the use, value and safety of the subject vehicles to the Plaintiffs.

240.    The Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiffs' acceptance of the vehicles.

241.    The Plaintiffs would not have purchased the subject vehicles had they known, prior to the respective times of purchase, that they would be required to regularly purchase and add large volumes of engine oil to the subject vehicles in order to prevent the subject vehicles' engines from failing.

## FRAUDULENT CONCEALMENT TOLLING

242.    Plaintiffs did not and could not have known that there was an oil consumption defect with the subject vehicles' respective engines at the time that they purchased the subject vehicles or any time thereafter.

243.    The breach of warranties four-year statute of limitations, which might otherwise apply to bar some of the Plaintiffs' claims, should be tolled because of Defendants' knowing and active concealment of the fact that the subject vehicles' engines contain a defect.

244.    While Defendants issued TSB's making clear they were aware that there was a defect with the subject vehicles' engines, Defendants failed to disclose the existence of the defect to Plaintiffs.

245.    Moreover, Defendants' authorized dealerships informed some or all of the Plaintiffs that the subject vehicles' excessive consumption of engine oil was normal, rather than the result of a defect.

246.    Defendants kept Plaintiffs ignorant of vital information essential to the pursuit of their claims.

247.    Defendants knowingly, affirmatively, and actively concealed the subject vehicles' defect from the Plaintiffs.

248.    Defendants were aware of the defect with the subject vehicles.

249.     Based upon the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## FIRST CAUSE OF ACTION
### Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

250.     The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

251.     The Plaintiffs are each a "consumer" as defined in 15 U.S.C. § 2301(3).

252.     Defendants are each a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

253.     The subject vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

254.     15 U.S.C. § 2304(a)(1) requires Defendants, as warrantors, to remedy any defect, malfunction or nonconformance of the subject vehicles within a reasonable time and without charge to the Plaintiffs.

255.     Despite repeated demands, Defendants have failed to remedy the subject vehicles' oil consumption defect within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the subject vehicles.

256.     As a result of Defendants' breaches of written and implied warranties, and Defendants' failure to remedy the same within a reasonable time and without charge to Plaintiffs, Plaintiffs have suffered damages.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty under N.J.S.A. 12A:2-313

257.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

258.   In connection with the sale of the subject vehicles to the Plaintiffs, Defendants provided the Plaintiffs with a New Vehicle Limited Warranty and Certified Pre-Owned Warranty, under which they agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

259.   Plaintiffs relied on Defendant's warranties when they agreed to purchase or lease the subject vehicles and Defendant's warranties were part of the basis of the bargain.

260.   Plaintiffs submitted their vehicles for warranty repairs as referenced herein. Defendants failed to comply with the terms of the express written warranty provided to each Plaintiff, by failing and/or refusing to repair the oil consumption defect under the vehicles' warranty as described herein.

261.   Plaintiffs have given Defendants reasonable opportunities to cure said defect, but Defendants have been unable and/or has refused to do so within a reasonable time.

262.   As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

263.   The Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiffs' acceptance of the subject vehicles.

264.   The Plaintiffs would not have purchased or leased the subject vehicles, or would have paid less for the subject vehicles, had they known, prior to their respective time of purchase or lease, that the subject vehicles contained the oil consumption defect.

41

265.     As a direct and proximate result of the willful failure of Defendants to comply with their obligations under the express warranties, Plaintiffs have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the subject vehicles containing the defects identified herein.

## THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### under N.J.S.A. 12A:2-314

266.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

267.    Defendants are merchants with respect to motor vehicles.

268.    The subject vehicles were each subject to implied warranties of merchantability, as defined in 15 U.S.C.  § 2308 and N.J.S.A. 12A:2-314, running from the Defendants to the Plaintiffs.

269.    An implied warranty that the subject vehicles were merchantable arose by operation of law as part of the purchase of the subject vehicles.

270.    Defendants breached the implied warranty of merchantability in that the subject vehicles were not in merchantable condition when the Plaintiffs purchased them, or at any time thereafter, and the subject vehicles are unfit for the ordinary purposes for which such vehicles are used.

271.    Plaintiffs notified Defendants of the defects in the subject vehicles within a reasonable time after Plaintiffs discovered them.

272.     As a result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs have suffered damages, including but not limited to incidental and consequential damages.

### FOURTH CAUSE OF ACTION
**Violation of New Jersey Consumer Fraud Act**
**N.J. Stat. Ann § 56:8-1,** *et seq.*

273.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

274.     Plaintiffs, who have suffered injury in fact and have lost money or property as a result of Defendants' violations of New Jersey's Consumer Fraud Act ("NJCFA"), allege this cause of action as a group action.

275.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of an merchandise…." N.J. Stat. Ann § 56:8-2.

276.     Plaintiffs are consumers who purchased and/or leased subject vehicles for personal, family or household use.

277.     Defendants engaged in unlawful conduct by deliberately and knowingly engaging in misrepresentations and false statements regarding the subject vehicles, in the course of Defendants' business.  Specifically, Defendants knew or should have known that the subject vehicles suffered from an excessive oil consumption defect that required supplemental addition of oil in quantities as high as one quart every 750 miles.  However, Defendants failed to disclose this defect to Plaintiffs at the time of purchase and/or lease.

278.     Defendants have also engaged in unlawful conduct by willfully and knowingly suppressing and/or omitting information related to the subject vehicles to consumers.

43

Specifically, Defendants purposefully and knowingly failed to disclose the oil consumption defect in the subject vehicles to consumers such as Plaintiffs, in order to secure the sale and/or lease of the subject vehicles as a premium price. Defendants also failed to disclose the oil consumption defect during the limited warranty period to avoid having to perform their contractual duties under the warranty to repair all known defects.

279.   Defendants did not fully and truthfully disclose to their customers the true nature of the oil consumption defect in the subject vehicles, said defects not being readily discoverable at the time of purchase or lease.

280.   Defendants intended that Plaintiffs rely on their misrepresentation and/or acts of concealment and omission, so that they would purchase and/or lease the subject vehicles.

281.   Accordingly, Defendants have engaged in unfair and deceptive trade practices, including representing that the subject vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the subject vehicles are of a particular standard and quality when they are not; advertising subject vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Defendants' acts and practices described herein offend established public policy because of the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Defendants fraudulently concealed the defective nature of the subject vehicles from consumers.

282.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

283.    By engaging in the above-described practice and the actions and omissions herein alleged, Defendants have committed one or more unlawful acts in violation of the NJCFA.

284.    Defendants' conduct caused Plaintiffs to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiffs have suffered an ascertainable loss in that they received less than what was promised to them by Defendants at the time they purchased and/or leased the subject vehicles. Plaintiffs have also had to expend time and resources in order to bring their vehicles in for service when the check engine oil light was activated, and will suffer future damages due to the loss in value of the vehicles as a result of the oil consumption defect.  Therefore, Plaintiffs are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

285.    A casual relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs.  Had the defective vehicle design in the subject vehicles been disclosed, Plaintiffs would not have purchased them or would have paid less for the subject vehicles had they decided to purchase them.

286.    Plaintiffs have suffered an ascertainable loss of monies and pursuant to NJ Stat. § 56:8-19 are entitled to treble damages.

287.    Unless Defendants are enjoined from continuing to engage in this business practice, Plaintiffs will continue to be injured by Defendants' wrongful actions and conduct. Therefore, Plaintiffs are entitled to injunctive relief.

288.    Pursuant to N.J. STAT. ANN § 56:8-20, Plaintiffs have served the New Jersey Attorney General with a copy of this Complaint.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiffs demand judgment against Defendants as follows:

a.  Money damages, in the form of a refund of the full contract prices, including, trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiffs on the subject contracts;

b.  Equitable relief including, but not limited to, replacement of the subject vehicles with new vehicles, or repair of the defective subject vehicles with an extension of the express and implied warranties, and service contracts which are or were applicable to the subject vehicles, in the event that Plaintiffs are not found to be entitled to revocation;

c.  Actual, incidental and consequential damages;

d.  Punitive damages;

e.  Reasonable attorney's fees;

f.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: December 3, 2018

Respectfully submitted,

By:   */s/ Sofia Balile*
Sofia Balile, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (917) 981-0849
Facsimile:  (203) 653-3424
*Attorneys for Plaintiffs*